## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CINDY VALDEZ and KADIJAH BALANCE, | § | Case No.: 4:23-cv-874 |
| | § | |
| *Plaintiffs*, | § | |
| vs. | § | |
| | § | |
| MAGNUM RESTAURANT GROUP | § | |
| INCORPORATED d/b/a SUNSET STRIP, | § | |
| DAVID NORIA, DAVID FAIRCHILD, *and* | § | |
| LLOYD ACE, | § | |
| *Defendants*. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, CINDY VALDEZ and KADIJAH BALANCE ("Plaintiffs") allege the following upon information and belief, based upon investigation of counsel, and personal knowledge:

## I.     NATURE OF THE ACTION

1.     Plaintiffs allege causes of action against Defendants MAGNUM RESTAURANT GROUP INCORPORATED, d/b/a SUNSET STRIP, DAVID NORIA, DAVID FAIRCHILD, and LLOYD ACE ("Defendants" or "Sunset Strip") for damages resulting from Defendants' evading the mandatory minimum wage and tip provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*("FLSA").

2.     Defendants own and operate a strip club named Sunset Strip. Plaintiffs' causes of action arise from Defendants' willful actions while Plaintiffs were employed by Defendants. Plaintiff Cindy Valdez was employed from approximately June 2012 through December 2022 and Plaintiff Kadijah Balance was employed from approximately November 2021 through December 2022. Throughout their employment with Defendants, Plaintiffs were denied minimum wage payments and had their tips taken, as part of Defendants' scheme to classify Plaintiffs and other dancers/entertainers as "independent contractors."

1

3.      Plaintiffs worked at Defendants' principal place of business located at 2425 Magnum Road, Houston, TX 77092.

4.       Defendants failed to pay Plaintiffs minimum wages for all  hours worked in violation of 29 U.S.C. § 206 of the FLSA. Furthermore, Defendants' practice taking tips, in the form of coerced tipouts, mandatory fees, and mandatory fines imposed on dancers, like Plaintiffs, violates the FLSA 29 U.S.C. § 203(m). Likewise, such actions cause dancer's compensation to all below the minimum, mandatory wage, in violation of 29 U.S.C. § 206. Forcing or coercing dancers to tip out other Club staff violates 29 C.F.R. § 531.5 which "prohibits an arrangement that tends to shift part of the employer's business expense to the employees." *Ramos-Barrientos v. Bland*, 661 F.3d 587, 594-95 (11th Cir. 2011). Violations of 29 C.F.R. § 531.5 are actionable when they cause an employee's compensation to fall below the mandatory minimum wage, in violation of 29 U.S.C. § 206. A required tip to Club staff each time Plaintiffs worked functioned as a subsidy to Defendants. Defendants had to pay their staff less because they were being tipped by the entertainers.

5.      As a result of Defendants' violations, Plaintiffs seek to recover damages for failure to pay minimum wage and violations of 29 U.S.C. § 203(m), including all tips, fees, or fines taken from Plaintiffs, liquidated damages, interest, and attorneys' fees and costs provided by 29 U.S.C. § 216(b).

**II.    PARTIES**

7.      Plaintiffs are individual adult residents of the State of Texas. Furthermore, Plaintiffs were employed by Defendants and qualifies as "employees" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1).

8.      MAGNUM RESTAURANT GROUP INCORPORATED, d/b/a SUNSET

STRIP ("Sunset Strip" or the "Club") is a Texas Corporation with its principal place of business at 2425 Magnum Road, Houston, TX 77092. At all times mentioned herein, they were an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). Sunset Strip may be served via its agent for service of process, Jeremy C. Levine located at 146 Wescott Street, STE 200, Houston, TX 77007.

9.     Defendant DAVID NORIA ("Noria") was a manager of Sunset Strip during the Relevant Period who executed the polices regarding payment to dancers and management of dancers, including Plaintiffs. He can be served at his place of employment at 2425 Magnum Road, Houston, TX 77092 or wherever he may be found.

10.    Defendant DAVID FAIRCHILD ("Fairchild") is/was the president and director of Sunset Strip during the Relevant Period who executed the policies regarding payment to dancers and management of dancers, including Plaintiffs. He may be served at 146 Wescott Street, STE 200, Houston, TX 77007 or wherever he may be found.

11.    Defendant LLOYD ACE ("Ace") is/was the vice president of Sunset Strip during the Relevant Period who executed the policies regarding payment to dancers and management of dancers, including Plaintiffs. He may be served at his address of 114 Del Monte Drive, Friendswood, TX 77546 or wherever he may be found.

12.    Noria, Fairchild and/or Ace directly or indirectly on behalf of Sunset strip, and, at all times mentioned herein were "employer(s)" or "joint employer(s)" of Plaintiffs within the meaning of the FLSA. They exerted operational and management control over Sunset Strip, including day to day management. They were, and are, frequently present at, owned, directed, controlled and managed the operations at Sunset Strip. They also controlled the nature, pay structure, and employment relationship of Plaintiffs and the FLSA Class members. Noria,

Fairchild and/or Ace had at all times relevant to this lawsuit, the authority to hire and fire employees at Sunset Strip, the authority to direct and supervise the work of employees, the authority to sign on the businesses' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, they were responsible for the day-to-day affairs of Sunset Strip. In particular, they were responsible for determining whether Sunset Strip complied with the FLSA.

13.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because they have had employees at their club engaged in commerce, which has travelled in interstate commerce, including but not limited to liquor and wine. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1).

14.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

15.     Plaintiffs are informed and believe that, at all relevant times herein, the Club engaged in acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its owners, employees, representatives, and agents and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

16.     At all material times during the three (3) years prior to the filing of this action, Defendants categorized all dancers/entertainers employed at Sunset Strip as "independent contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiffs were individual employees who engaged in commerce or in the production of goods for commerce as required by the FLSA.

17.     Plaintiffs are informed and believe, and on the basis allege that, each of the

Defendants acted, in all respects pertinent to this action, as the agent or employer of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employers and/or joint employers of Plaintiffs in that each of them exercised control over their wage payments and control over their duties.

18.     Plaintiffs are informed and believe, and on that basis alleges that, at all relevant times, each and every Defendant has been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each other and that each was acting within the course and scope of his or their ownership, agency, service, joint venture, and employment.

19.     At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendants.

### III.     VENUE AND JURSIDICTION AND APPLICABLE LAW

20.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. §§ 201, *et seq*.

21.     Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendants' club is located in this District and Plaintiffs worked in this District.

### IV.     FACTUAL ALLEGATIONS

22.     Defendants operate an adult-oriented entertainment facility located at 10520 Gulf Freeway, Houston, Texas 77034. The following picture depicts the outside of the Club.



23.     At all times mentioned herein, Defendants were the "employer(s)" of Plaintiffs as defined by the FLSA, 29 U.S.C. §203(m).

24.     At all times Plaintiffs worked for Defendants in the three years prior to filing this Complaint (the Relevant Time), Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and has failed and refused to pay wages to such dancers/entertainers.

25.     At all times during the Relevant Time, Defendants exercised a great deal of operational and management control over the subject club, particularly in the areas of terms and conditions of employment applicable to dancers and entertainers.

26.     Plaintiff Cindy Valdez began working as a dancer for Defendants in June 2012 through December 2022 and Plaintiff Kadijah Balance began working as a dancer for Defendants in November 2021 through December 2022.

27.     The primary duty of an entertainer is to dance and entertain customers and give them a good experience. Specifically, an entertainer performs stage and table dances, and entertains customers on an hourly basis. Stated differently, entertainers dance on stage, perform table dances, and entertain customers in VIP rooms, all while nude or semi-nude.

28.     Plaintiffs worked and performed at the adult-oriented entertainment facility multiple shifts per week. Plaintiffs were an integral part of Defendants' business which operated solely as an adult-oriented entertainment facility featuring nude or semi-nude female entertainers. On its website, the Club prominently displays scantily clad women next to its motto, "Big Games, Stiff Drinks, Wild Women,"[1] and features events such as lingerie staff contests, Halloween parties, and couple's nights. The Club's Instagram consists of posters featuring women in similar states of deshabille, and visual media of entertainers preforming on stage at the Club[2].

29.     Defendants did not pay entertainers and in fact took their tip money in the forms of fees, fines and other coerced/mandatory tip payments.

30.     Defendants exercised significant control over Plaintiffs during their shifts and required Plaintiffs to work an entire shift. For example, Defendants required Plaintiffs to work a Sunday or Monday, in order to work any other days of the weeks. Defendants also required Plaintiffs to stay a minimum of six-hours for each shift started and if you tried to leave early, you had to get a slip signed with permission from a manager who would require an extra tip. In addition, if any dancer wanted to leave early, the Club charged them a fine. Defendants controlled the means and manner in which Plaintiffs could perform. For example, Plaintiffs were required to participate in stage rotation, and would have to pay the DJ a tip in order to be able to skip their rotation. Defendants set the rates charged by Plaintiffs for dances, including $20 minimum for an individual dance and $180 minimum for VIP room dances. Defendants also kept a portion of Plaintiffs' tips whenever such were charged by a customer via credit card, with the Club taking 20% of Plaintiffs' customer charges. Defendants had the authority to suspend, fine, fire, or otherwise discipline entertainers for non-compliance with its rules regarding dancing, and

[1] https://www.sunsethouston.com/
[2] https://www.instagram.com/sunsetstrip_houston/

7

actually did so.

31.     Although Defendants allowed entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the premises and required dancer heels. On Monday through Thursday, Plaintiffs were required to wear a dress; if they did not comply, they were sent home and could not work. Every shift, Plaintiffs were required to wear a full face of makeup; if they arrived without makeup done, they were not allowed to apply it in the Club's locker room and would be sent home and could not work. To comply with the Club's dress and appearance standards, Plaintiffs typically expended approximately sixty (60) minutes of time each shift getting ready for work without being paid any wages for such time getting ready. Plaintiffs would need to apply their makeup at home, and then finish dressing for work in the club. If they took longer than thirty (30) minutes to get ready in the Club's locker room, they would be sent home and could not work. Defendants did enforce the dress code on entertainers, to the extent such may have been required as a sexually oriented business by the City of Houston and/or State of Texas, in addition to their own Club dress code for dancers.

32.     Plaintiffs were compensated exclusively through tips from Sunset Strip's customers. That is, Defendants did not pay Plaintiffs whatsoever for any hours worked at its establishment. Defendants also charged Plaintiffs for working each shift in the form of a hours fee, which was $50.00 per shift.  Defendants also took 20% of Plaintiffs' tips if a customer charged such via credit card. Although Defendants may have given Plaintiffs the cash from customer's credit card charges, the cash represented funds paid by customers that only passed through Defendants' credit card system, and such did not become part of Defendants' gross receipts and did not constitute wages to Plaintiffs.

33.     Defendants also required Plaintiffs to share their tips with Defendants and other non-service employees who do not customarily receive tips, including the managers, security disc jockeys, and the house mother. If Plaintiffs failed to tip the Club staff as expected, they would not be allowed to leave, not be allowed to come in for additional shifts that week, or worse, fired from working at the Club. In this way, the tipouts Plaintiffs paid to Club staff were forced and/or coerced, in violation of §203(m).

14.     Defendants further controlled the entertainers by requiring them to sign contracts, which attempt to re-define laws governing employee/employer relationships (amongst other things) which Defendants knew at the time could not be thwarted via contract. The contracts further shifted obligations of the Club to keep records to Plaintiffs, even though federal law clearly required otherwise. Importantly, the contracts subjected Plaintiffs to punishment should they choose to enforce their federal rights to proper compensation, including enforcement of the FLSA, and requiring them to pay back tips earned from customers to the Club. Plaintiffs argue these terms are unenforceable and void on public policy grounds – at a minimum- under Federal wage laws. At the very least, the contracts show Defendants' willful violation of the FLSA. Defendants' failure to pay Plaintiffs in accordance with the applicable laws was willful and not based on good faith and reasonable belief that its conduct complied with the FLSA.

34.     Defendants provided and paid for all advertising and marketing efforts undertaken on behalf of Defendants.

35.     Defendants paid for the facility used as the Club, maintenance of the facility, the sound system, stages, lights, beverages, and inventory used at the facility.

36.     Defendants made all hiring decisions regarding wait staff, security, entertainers,

managerial, and all other employees on the premises.

37.     Defendants' opportunity for profit and loss far exceeded Plaintiffs' opportunity for profit and loss from work at the Club.

38.     The position of entertainer requires no managerial skill of others, and requires little other skill or education, formal or otherwise. The only requirements to become an entertainer at are "physical attributes" and the ability to dance seductively. The amount of skill required is more akin to an employment position than that of a typical independent contractor.

39.     Defendants failed to maintain records of wages, fines, fees, tips, and gratuities and/or service charges paid or received by Plaintiffs, as was required by law. Furthermore, Defendants failed to maintain records of the coerced tips Plaintiffs were forced to make to other employees of the Club, which was also required by law.

40.     Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

    a.     The time of day and day of week on which the employees' work week begins;

    b.     The regular hourly rate of pay for any workweek in which overtime compensations due under section 7(a) of the FLSA;

    c.     An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

    d.     The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

    e.     The hours worked each workday and total hours worked each workweek;

    f.     The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

    g.     The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.    The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i.    The dates, amounts, and nature of the items which make up the total additions and deductions;

j.    The total wages paid each pay period; and

k.    The date of payment and the pay period covered by payment. 29 C.F.R. 516.2, 516.5.

41.    Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiffs seek to put Defendants on notice that they intend to rely on *Anderson* to provide the extent of their unpaid work.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**FAILURE TO PAY MINIMUM WAGE PURSUANT TO THE FLSA, 29 U.S.C. § 206**

62.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in the paragraphs above as though fully set forth herein.

63.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

64.    Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because they have employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars

($500,000).

65.    Defendants failed to pay Plaintiffs the minimum wage in violation of 29 U.S.C. § 206.

66.    Defendants' requirement that Plaintiffs pay fees, fines and tipouts to the Club and its staff violated the "free and clear" requirement of 29 C.F.R. § 531.35, which also caused Defendants to fail to mee the minimum wage in violation of 29 U.S.C. § 206.

67.    Based upon the conduct alleged herein, Defendants knowingly, intentionally, and willfully violated the FLSA by not paying Plaintiffs the minimum wage under the FLSA.

68.    Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were illegal.

69.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover minimum wage compensation and all fees, fines and forced tip sharing that Defendants required Plaintiffs to pay in order to work at Sunset Strip, as well as an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION
#### UNLAWFUL TAKING OF TIPS IN VIOLATION OF THE FLSA, 29 U.S.C. § 203

70.    Plaintiffs hereby incorporates by reference and re-allege each and every allegation set forth in the paragraphs above as though fully set forth herein.

71.    Plaintiffs customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore is a tipped employee as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

72.     At all relevant times, Defendants were the "employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

73.     Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

74.     Defendants operate an enterprise engaged in commerce within the meaning for the FLSA, 29 U.S.C. § 203(s)(1), because they have employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

75.     Under TIPA:

[a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203.

76.     Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges, and other payments to management, house moms, disc jockeys, and floor men in violation of TIPA.

77.     Defendants required Plaintiffs to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customers leaving the tips (such as the Club DJs, security, and management). *See* U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

78.     Defendants also required Plaintiffs to pay monetary fees and fines to the Club and its staff, in violation of 29 U.S.C. § 203(m), because the only form of compensation Plaintiffs received from their work was tips, which they then had to payout to the Club.

79.     Defendants' requirement that Plaintiffs pay fees to Defendants and other Sunset Strip employees violated the "free and clear" requirement of 29 C.F.R. § 531.35, dipping their wages below that required by 29 U.S.C. § 206, as well as 29 U.S.C. § 203(m).

80.     Because Defendants took Plaintiffs' tips, pursuant to 29 U.S.C. § 203(m)(2)(B), Defendants was not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

81.     The contribution Defendants required Plaintiffs to make after each shift was arbitrary and capricious and the distribution was not agreed to by Plaintiffs or other dancers; but rather, was imposed upon Plaintiffs and other dancers. Plaintiffs did not voluntarily tip other Sunset Strip employees and managers, but rather were forced and/or coerced to do so because Defendants imposed consequences affecting Plaintiffs' employment for failure to tip by Defendants, including but not limited to termination.

82.     By requiring Plaintiffs to pay out their tips to club management and other employees, Defendants "retained" a portion of the tips received by Plaintiffs in violation of the FLSA.

83.     Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiffs.

84.     At the time of its illegal conduct, Defendants knew or showed reckless disregard that the forced tips which Defendants required Plaintiffs to contribute included non-tipped employees and, therefore, was statutorily illegal. Despite this, Defendants willfully failed and refused to allow Plaintiffs to keep the tips to which they were entitled

85.     Defendants' willful failure and refusal to pay Plaintiffs the tips they earned violates the FLSA.

86.     Further, in each purchase, Sunset Strip would take 20% of Plaintiffs' tips when customers used credit cards as their method of payments. The amounts charged by Sunset Strip were above the costs associated with credit card use and would decrease the amount of tips received by Plaintiffs from the customer if a credit card was utilized.

87.     As such, Defendants improperly and willfully offset credit tips to recover costs that exceed the direct fees charged by the credit card companies in direct violation to FLSA §203(m)(2). Defendants knowingly and willfully charged Plaintiffs these costs over a business decision, rather than as a fee directly attributable to its cost of dealing in credit.

88.     On an aggregate basis, Defendants' expenses for collecting and distributing credit card tips to cash, including both credit card issuer fees and expenses for cash-delivery services, always exceeded the offset amount. As such, Defendants improperly and willfully deducted more than the legal costs required by law when making such collections and directly violated FLSA §203(m)(2).

89.     As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiffs are entitled to damages in the form of all misappropriated tips, "tip-credits," and fees charged—including house fees—as illegal kickbacks, plus interest; and as liquated damages, an amount equal to all misappropriated tips, "tip-credits," illegal kickbacks, mandatory attorneys' fees, costs, and expenses.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request of this Court the following relief:

1.     For actual damages according to proof at trial;

2.     For special damages according to proof at trial;

3.     For liquidated damages;

4.      For attorneys' fees;

5.      For costs of suit incurred herein;

6.      For pre-judgment interest;

7.      For post-judgement interest; and

8.      For such other and further relief as the tribunal may deem just and proper.

Dated: March 9, 2023

/s/ Jarrett L. Ellzey
Jarrett L. Ellzey
Texas Bar No. 24040864
Leigh Montgomery
Texas Bar No. 24052214
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, Texas 77066
Telephone: (713) 554-2377
Fax: (888) 995-3335
*jarrett@ellzeylaw.com*
*leigh@ellzeylaw.com*

***Attorneys for Plaintiffs***